OLIVER WRIGHT LEARY, Plaintiff v. N.C. FOREST PRODUCTS, INC., CANAL WOOD
CORPORATION, MOSES LASITTER, JOSEPH WETHERINGTON, CHRISTOPHER
L. WETHERINGTON, TAMMY WETHERINGTON, MAMIE E. LEARY, T. BARBARA
LEARY, MAMIE RUTH LEARY CLAGGETT, ELMER LEE LEARY, SR., PATTIE
LEARY, LINWOOD RICHARD LEARY, SR., SANDRA LEARY GRISSOM, LAURA M.
LEARY ELLIOTT, ALLEN R. ELLIOTT, SHIRLEY LEARY STATEN, HAROLD
J.R. LEARY, RICHARD SMITH, ELMER LEE LEARY, JR., PATRICK L. LEARY,
KENNETH LEARY, ARLENE P. SMITH, AND THE LAW FIRM OF LEE, HANCOCK,
LASITTER & KING, Defendants

No. COA02-599

(Filed 6 May 2003)

**1. Enforcement of Judgments— execution sale—collateral attack on confirmation—faulty notice of sale**

A judgment debtor could not file a separate lawsuit to collaterally attack an order confirming an execution sale based on errors in the conduct of the sale, and the action was correctly dismissed for failure to state a claim upon which relief could be granted. Jurisdiction was not disputed and continued even if plaintiff did not receive notice of the sale; therefore, the order confirming the sale was not void and plaintiff could not attack it in a separate lawsuit.

**2. Fraud— allegation—not sufficiently specific**

A judgment debtor was not allowed to attack an execution sale as fraudulent in an independent action where his conclusory allegations did not supply the necessary particularity.

**3. Attorneys— malpractice—third party**

A claim of legal malpractice based upon non-client third-party liability arising from an execution sale was correctly dismissed for failure to state a claim upon which relief could be granted. The complaint contained no allegation that the law firm's representation of its client induced any action by plaintiff in reliance on the law firm's conduct.

Judge BRYANT concurring in part and dissenting in part.

Appeal by plaintiff from order filed 30 July 2001 by Judge W. Russell Duke, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 21 January 2003.

*Oliver W. Leary, plaintiff-appellant pro se.*

*Lee, Hancock and Lasitter, P.A., by Moses D. Lasitter, for defendants-appellees N.C. Forest Products, Inc., Moses Lasitter, Joseph Wetherington, Christopher L. Wetherington, Tammy Wetherington, and Lee, Hancock, Lasitter & King.*

*Dees, Smith, Powell, Jarrett, Dees & Jones, by Tommy W. Jarrett, for defendant-appellee Canal Wood Corporation.*

*Gregory K. James, P.A., by David C. Sutton, for defendants-appellees T. Barbara Leary, Mamie Ruth Leary Claggett, Elmer Lee Leary, Sr. and wife, Pattie Leary, Linwood Richard Leary, Sr., Sandra Leary Grissom, Laura M. Leary Elliott, Allen R. Elliott, Shirley Leary Staten, Harold J.R. Leary, Elmer Leary, Jr., Patrick L. Leary, Kenneth Leary, Richard Smith and wife Arlene P. Smith and Mamie E. Leary.*

GEER, Judge.

Oliver Wright Leary appeals an order filed 30 July 2001 dismissing his complaint for failure to state a claim upon which relief can be granted. This appeal primarily involves the question whether a judgment debtor may file a separate lawsuit to collaterally attack an order confirming an execution sale based on errors in the conduct of that sale. We hold that he cannot. Any challenge of the judgment debtor to the confirmation order should have been by appeal from the order or by a motion to set aside the order filed in the original lawsuit.

On 4 November 1991, defendant N.C. Forest Products, Inc. ("N.C. Forest") obtained a judgment in case number 89 CVD 1966 against Oliver Wright Leary, the plaintiff in this case. Mr. Leary apparently did not appeal and does not otherwise challenge the validity of that judgment. On 14 May 1992, in order to satisfy that judgment, the Pitt County sheriff held a sale of Mr. Leary's 1/13 interest in two tracts of land pursuant to a writ of execution issued on 23 January 1992. At that sale, there were no bidders. The sheriff filed a Report regarding the sale on 15 May 1992.

On 30 April 1993, the deputy clerk of court issued a second writ of execution to the sheriff, stating that $24,275.00 was due and commanding the sheriff to satisfy the judgment out of the personal property of the defendant or, if sufficient personal property could not be found, then out of real property belonging to the defendant. The writ of execution noted that "debtor has waived exemptions."

LEARY v. N.C. FOREST PRODS., INC.

[157 N.C. App. 396 (2003)]

In a Report of Sale of Real Property filed 14 June 1993, the sheriff stated that "after due and legal notice," Mr. Leary's 1/13 interest was sold at public auction on 14 June 1993 to Christopher L. Wetherington for $100.00. According to plaintiff's complaint in this case, Mr. Wetherington was the Assistant Secretary for the judgment creditor N.C. Forest. On 21 July 1993, the assistant clerk of court filed an order directing that the sale be confirmed and that the sheriff deliver to the purchaser a good and sufficient deed.

On 6 July 1993, the sheriff executed a deed conveying Mr. Leary's 1/13 interest to Mr. Wetherington. The deed recited that the sheriff had sold the property at public auction "after having first given notice of the time and place of such sale, and advertised the same according to law."

On 22 April 1996, Mr. Wetherington and his wife executed a quitclaim deed of the 1/13 interest to N.C. Forest. A year later, on 17 June 1997, N.C. Forest in turn executed a quitclaim deed to defendants Patrick L. Leary, Elmer L. Leary, Jr., and Kenneth L. Leary. On 26 November 1998, the Leary defendants[1] then executed a timber deed granting Canal Wood Corporation ("Canal") the timber rights on the property for 2½ years.

Mr. Leary filed this action four years later on 10 October 2000 in Pitt County Superior Court against N.C. Forest, Canal, Joseph Wetherington, Christopher L. Wetherington, Tammy Wetherington, the Leary defendants, the law firm of Lee, Hancock, Lasitter and King (the "law firm"), and Moses Lasitter.

The complaint alleges (1) a claim against N.C. Forest and arguably the Wetheringtons based on "a fraudulent sale in the Sheriff's manner of handling" the execution sale; (2) trespass against Canal for removing timber without plaintiff's consent; (3) malpractice against Moses Lasitter and the law firm for non-client third-party liability; and (4) "promissory" and "equitable" fraud against the Leary defendants for executing the timber deed. With the exception of the malpractice claim, each cause of action is derivative of plaintiff's claim that the execution sale was invalid.

---

1. "The Leary defendants" include plaintiff's mother and siblings: Mamie E. Leary, T. Barbara Leary, Mamie Ruth Leary Claggett, Elmer Lee Leary, Sr., Pattie Leary, Linwood Richard Leary, Sr., Sandra Leary Grissom, Laura M. Leary Elliott, Allen R. Elliott, Shirley Leary Staten, Harold J.R. Leary, Richard Smith, Elmer Lee Leary, Jr., Patrick L. Leary, Kenneth Leary, and Arlene P. Smith.

With respect to his claim against N.C. Forest and the Wetheringtons, plaintiff Leary alleged:

39. [A]ll interests and rights to [plaintiff's property] conveyed by [the sheriff] . . . was in violation of "due process" of law.

40. Defendant, N.C. Forest Products, Inc.'s request presented to [the sheriff] to sale [sic] the property . . . was a fraudulent sale as a result of its grossly low sale price, Hundred Dollars ($100.00), an agent of the "Judgment Creditor" [N.C. Forest Products, Inc.] purchased at the "Sale," the amount of the judgment debt TWENTY FOUR THOUSAND TWO HUNDRED AND SEVENTY-FIVE DOLLARS and NO/100 ($24,275.00) was not bid[] at the "Sale", and "Notice" requirements set forth in G.S. 1-339.54 of the North Carolina General Statutes were not followed.

41. The plaintiff, Oliver Wright Leary, owns a one-thirteenth (1/13th) undivided remainderman's interest in fee of the property sold . . . by [the sheriff].

42. Plaintiff alleges [sic] N.C. Forest Products, Inc. "defrauded" [plaintiff] of his one-thirteenth (1/13th) interest . . . by its conduct of "Sale" as fraudulent action as a result of the grossly inadequate sale price, an agent of N.C. Forest Products, Inc[.], son and son's wife purchased at the sale, Christopher Wetherington is the Assistant Secretary for N.C. Forest Products, Inc., and "Notice" requirements set forth in N.C.G.S. 1-339.54 [were] not followed by N.C. Forest Products, Inc.

As to the malpractice claim, plaintiff stated attorney Moses Lasitter and the law firm

without justification and . . . knowingly committed a fraudulent act by not following the prerequisite procedural steps in their advi[c]e to their client N.C. Forest Products, Inc., requesting a sheriff sale of plaintiff's one-thirteenth . . . property interest and the manner of the sale, therefore, causing injury to [plaintiff].

In his prayer for relief, plaintiff seeks to have the superior court set aside the sheriff's sale; to recover from the Leary defendants and Canal the fair market value of timber and trees removed from the land pursuant to the timber deed and to have that amount trebled as to the Leary defendants and doubled as to Canal; and to recover compensatory and punitive damages from N.C. Forest, the Wetheringtons, and the law firm. In support of his claims, plaintiff attached to the

complaint various documents filed in 89 CVD 1966 and copies of the ·pertinent deeds. On 6 November 2000, plaintiff also submitted an affidavit by the assistant clerk of court of Pitt County stating that the court file in 89 CVD 1966 had been searched and contained no indication that Mr. Leary had been served with notices "of the attached 'Report of Sale of Real Property' dated May 15, 1992 and June 14, 1993. . . ."

Defendants each moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted on the grounds that: (1) plaintiff was barred from attacking the confirmation order in an independent action; (2) the applicable statutes of limitations had run; (3) the doctrine of laches barred plaintiff's claims; and (4) Canal was a bona fide purchaser for value without notice. The trial court granted defendants' motions by its order filed 30 July 2001.

---

When considering a motion to dismiss under Rule 12(b)(6) of the Rules of Civil Procedure, " '[t]he question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not.' " *Grant Constr. Co. v. McRae*, 146 N.C. App. 370, 373, 553 S.E.2d 89, 91 (2001) (quoting *Harris v. NCNB*, 85 N.C. App. 669, 670-71, 355 S.E.2d 838, 840 (1987)). The court must construe the complaint liberally and "should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. County of Person*, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419 (2000). This Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.

I

[1] Defendants argue that the superior court action was properly dismissed because it represents a collateral attack on the clerk of court's order of confirmation. We agree.

The confirmation order was entered in case 89 CVD 1966. Plaintiff has not argued and nothing in the record suggests that he was not properly served in 89 CVD 1966 or that the district court in any other manner lacked jurisdiction. Further, plaintiff has not challenged the validity of the judgment or the writ of execution, which he incorpo-

rated by reference in his complaint. Because of these undisputed facts, the clerk had authority under N.C. Gen. Stat. § 1-339.67 to confirm any execution sale conducted to satisfy the judgment.

Plaintiff contends that the confirmation order was void because he did not receive notice of the actual judicial sale as specified in N.C. Gen. Stat. § 1-339.54.[2] If, however, a court has jurisdiction over the parties and the subject matter and has authority to enter the type of order at issue, then an order is not void. *Barton v. Sutton*, 152 N.C. App. 706, 708-09, 568 S.E.2d 264, 265-66 (2002) (default judgment not void as to insurance company that did not receive statutorily-required notice because court had personal and subject matter jurisdiction and authority to enter a default judgment); *Hamilton v. Freeman*, 147 N.C. App. 195, 204, 554 S.E.2d 856, 861 (2001) ("Where a court has authority to hear and determine the questions in dispute and has control over the parties to the controversy, a judgment issued by the court is not void, even if contrary to law."), *disc. review denied*, 355 N.C. 285, 560 S.E.2d 802, 560 S.E.2d 803 (2002).

Because it is undisputed that the district court had personal and subject matter jurisdiction in 89 CVD 1966 and the clerk had statutory authority to issue confirmation orders, the order in this case was not void. Even if plaintiff failed to receive notice of the execution sale, that fact did not divest the court of jurisdiction. As stated in 47 Am. Jur. 2d *Judicial Sales* § 45, "[T]he validity of a judicial sale rests on the jurisdiction of the court to entertain the action or proceeding in which the sale is ordered or decreed." Because the district court had jurisdiction over the underlying action, jurisdiction existed for purposes of the execution sale and the confirmation order.

Since the confirmation order was not void, plaintiff could not attack it in a separate lawsuit. In *Edwards v. Brown's Cabinets and Millwork, Inc.*, 63 N.C. App. 524, 528, 305 S.E.2d 765, 768 (1983) (quoting N.C. Gen. Stat. § 1-440.1), this Court considered the analogous question of a collateral attack on an attachment of property, which the Court described as " 'a preliminary execution against property.' " In *Edwards*, the plaintiff had, in an independent action, attacked the attachment of property for satisfaction of a judgment against her daughter, but, like plaintiff in this case, did not challenge

---

2. Although Mr. Leary attempted to prove his allegation with an affidavit from the assistant clerk of court, that affidavit merely states that the file does not show that Mr. Leary received copies of the sheriff's reports of the outcomes of the two sales filed on 15 May 1992 and 14 June 1993. The affidavit makes no reference to whether or not Mr. Leary received notice in advance of the sale.

the first court's jurisdiction or the judgment rendered in that court. This Court held that if a trial court has jurisdiction to render a judgment, then orders resulting from ancillary proceedings may not be collaterally attacked:

> A void judgment may be attacked directly or collaterally by any party adversely affected thereby. However, the court in [the original proceeding] had personal jurisdiction and the judgment therein is valid notwithstanding the validity of the attachment. Where the defect complained of is contrary to the course and practice of the court but is non-jurisdictional, the judgment is irregular and is voidable, but not void. Such a judgment is binding on the parties until corrected or vacated in the proper manner.

*Id.* at 529-30, 305 S.E.2d at 769 (citations omitted). According to *Edwards*, the proper method of attack for a non-jurisdictional procedural defect in an ancillary proceeding is "a motion in the cause." *Id.* at 530, 305 S.E.2d at 769. This rule applies equally to procedural defects in execution sales such as plaintiff alleges in this case.

Indeed, the North Carolina Supreme Court has repeatedly held that challenges to judicial sales for inadequate notice cannot be made collaterally. In *Henderson County v. Osteen*, 292 N.C. 692, 235 S.E.2d 166 (1977), property was sold without proper notice of the execution sale to the defendant's estate. The Supreme Court held that such a claim "was properly brought before the Superior Court in a motion in the cause, not an independent action." *Id.* at 701, 235 S.E.2d at 172. Likewise, the Court held in *Williams v. Charles F. Dunn & Sons Co.*, 163 N.C. 206, 212, 79 S.E. 512, 514 (1913), that when a judgment creditor purchases at an execution sale to which the judgment debtor has received inadequate notice, "the sale may be set aside at the instance of the defendant in the execution by a direct proceeding." The Court stressed that "an execution sale cannot be collaterally avoided because real estate was sold without first levying upon personalty, nor because of irregularities *or deficiencies in the advertisements*, nor for defects in the levy . . . ." *Id.* (emphasis added). The Court clarified that "deficiencies in the advertisements" referred both to the general advertisement of the sale and to the notice to the defendant of the sale. *Id. See also Walston v. W.H. Applewhite & Co.*, 237 N.C. 419, 424, 75 S.E.2d 138, 142 (1953) (sale may be set aside for inadequate notice only through a direct proceeding); *Bank of Pinehurst v. Gardner*, 218 N.C. 584, 585-86, 11 S.E.2d 872, 872-73 (1940) (when

judgment debtor did not receive notice of a second judicial sale, he properly filed a motion in the cause for resale of the property).

The dissent cites *Inland Greens HOA, Inc. v. Dallas Harris Real Estate-Construction, Inc.*, 127 N.C. App. 610, 492 S.E.2d 359 (1997) and *Board of Comm'rs of Roxboro v. Bumpass*, 233 N.C. 190, 63 S.E.2d 144 (1951) as supporting a collateral attack when there has been a lack of notice. In each case, however, the lack of notice occurred because the individual or entity seeking relief from the judgment was not actually a party to the underlying action—in contrast to Mr. Leary who was the judgment debtor. *Inland Greens*, 127 N.C. App. at 612, 492 S.E.2d at 361; *Bumpass*, 233 N.C. at 195, 63 S.E.2d at 147. Moreover, in neither case did the party make a collateral attack; instead they proceeded by filing a motion in the underlying proceeding, precisely as plaintiff should have done in this case. *See Bumpass*, 233 N.C. at 192, 63 S.E.2d at 145-46 (unserved property owner made a special appearance before the clerk and moved to vacate the order confirming the sale); *Inland Greens*, 127 N.C. App. at 613, 492 S.E.2d at 361 (dismissed party filed Rule 60(b) motion).

[2] Plaintiff has also alleged that the sale was fraudulent. Some decisions have suggested that a judgment acquired by fraud may be challenged collaterally. *See, e.g., Abernethy Land & Finance Co. v. First Sec. Trust Co.*, 213 N.C. 369, 372, 196 S.E. 340, 342 (1938) ("When the ground alleged for setting aside a judgment, [sale] . . . is not based upon fraud the proper remedy is likewise by motion in the cause."). *But see Brown v. Miller*, 63 N.C. App. 694, 697, 306 S.E.2d 502, 504 (1983) (plaintiff could not bring independent action collaterally attacking judicial sale on the grounds of fraud; party was required to make a motion to the clerk in the underlying action or appeal from the clerk's order).

Under Rule 9(b) of the Rules of Civil Procedure, "[i]n all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity." Mr. Leary's conclusory allegations do not supply the necessary particularity. *See Harrold v. Dowd*, 149 N.C. App. 777, 782-83, 561 S.E.2d 914, 918 (2002) (under Rule 9(b), plaintiff must, at a minimum, allege time, place, and content of the fraudulent representation, the identity of the person making the representation, and what was obtained as a result of the fraud).

In short, the district court had personal and subject matter jurisdiction when it entered the judgment that was the basis of the execu-

tion sale. Under longstanding Supreme Court precedent, Mr. Leary, as a properly-served defendant, was required to make any challenge to that sale—even if based on inadequate notice—through a motion to the clerk to set aside her confirmation of the sale. Mr. Leary is not permitted to attack that order of confirmation in an independent action.

Defendants also assert that plaintiff's claims are barred by the applicable statutes of limitations and the doctrine of laches. Canal further contends that plaintiff is barred from suing it for trespass because it is a bona fide purchaser for value. Because we hold that plaintiff's claims—with the exception of the malpractice claim—all represent an improper collateral attack on the clerk's order, we need not reach those issues.

II

**[3]** Plaintiff argues that he sufficiently stated a malpractice claim for non-client third-party liability. We disagree.

In North Carolina, a professional malpractice claim may be based on (1) privity of contract or (2) third-party beneficiary contract liability. *United Leasing Corp. v. Miller*, 45 N.C. App. 400, 263 S.E.2d 313 (1980). In cases such as this one, in which the plaintiff alleges neither privity nor that he was a third party beneficiary, this Court has also allowed a claim for negligence if the defendant, by entering into a contract with another party, has " 'place[d] himself in such a relation toward [plaintiff] that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that [plaintiff] will not be injured. ' " *Id.* at 406, 263 S.E.2d at 317 (quoting *Industries, Inc. v. Construction Co.*, 42 N.C. App. 259, 271, 257 S.E.2d 50, 58 (1979)).

Whether a non-client third party may recover for an attorney's malpractice under this alternative tort theory depends on several factors:

> (1) the extent to which the transaction was intended to affect the [third party]; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the [attorney's] conduct and the injury; (5) the moral blame attached to such conduct; and (6) the policy of preventing future harm.

*United Leasing*, 45 N.C. App. at 406-07, 263 S.E.2d at 318.

**LEARY v. N.C. FOREST PRODS., INC.**

[157 N.C. App. 396 (2003)]

As to the first factor, our courts have generally focused on whether the attorney's (or other professional's) conduct, based on a contractual agreement with the attorney's client, was intended or likely to cause a third party to act in reliance on the deficient service performed by the attorney for his client. *See Title Ins. Co. of Minn. v. Smith, Debnam, Hibbert and Pahl*, 119 N.C. App. 608, 613, 459 S.E.2d 801, 805 (1995) (attorney owed third party duty of care where he furnished a title certificate to the non-client plaintiff for the purpose of inducing the plaintiff to issue a title policy for the benefit of his client), *aff'd in part*, 342 N.C. 887, 467 S.E.2d 241 (1996); *United Leasing*, 45 N.C. App. at 407, 263 S.E.2d at 318 (where the defendant-attorney's letter to the non-client plaintiff indicating there was no lien on the property "was directly intended to affect [the] plaintiff" by "inducing [the] plaintiff to lease the [property]"). *See also Commonwealth Land Title Ins. Co. v. Walker and Romm*, 883 F. Supp. 25, 28 (E.D.N.C.) (duty of care existed where the defendant knew the third-party plaintiff was likely to rely on his certification when it issued its title insurance policies and the plaintiff's reliance on the defendant's representation and the resulting harm to the plaintiff were foreseeable), *aff'd per curiam*, 43 F.3d 1465 (4th Cir. 1994).

In this case, plaintiff alleged Moses Lasitter and the law firm were liable to him for "not following the prerequisite procedural steps in their advi[c]e to their client N.C. Forest Products, Inc." with respect to the sheriff's sale of plaintiff's property interest, thereby causing plaintiff injury. There is no allegation in the complaint that the law firm's representation of its client induced any action on the part of plaintiff in reliance on the law firm's conduct in connection with the execution sale. In the absence of such an allegation, plaintiff has failed to state a claim upon which relief can be granted, and the trial court properly dismissed his claim against the law firm. *RCDI Constr., Inc. v. Spaceplan/Architecture*, 148 F. Supp. 2d 607, 621 (W.D.N.C. 2001) (because there was neither intended nor actual reliance by the third-party plaintiffs on the defendants' conduct, the defendants owed no duty of care to the plaintiffs and thus could not be held liable for any negligence in the rendering of their service), *aff'd per curiam*, 29 Fed. Appx. 120, 2002 U.S. App. LEXIS 640 (4th Cir. 2002).

Affirmed.

Judge WYNN concurs.

Judge BRYANT concurs in part and dissents in part.

BRYANT, Judge, concurring in part and dissenting in part.

I fully concur in issue II of the majority opinion upholding the trial court's dismissal of plaintiff's non-client third-party malpractice claim; however, I dissent as to the majority's holding regarding plaintiff's ability to collaterally attack an order that he claims was void for lack of notice.

Defendants initially argue in their briefs to this Court that plaintiff's complaint must fail in its entirety because plaintiff's claims turn on the procedures involved in the sheriff's sale and the setting aside of the clerk's confirmation order and that this order cannot be collaterally attacked. In support of their position, defendants point to *Questor Corp. v. DuBose*, 46 N.C. App. 612, 614, 265 S.E.2d 501, 503 (1980), in which this Court held the plaintiffs could not collaterally attack an execution sale and the clerk's subsequent judgment of confirmation because the only avenue available to the plaintiffs was by either motion in the cause or direct appeal. For the reasons set out below, I believe *Questor* is distinguishable and does not control this case.

A collateral attack is one in which a plaintiff is not entitled to the relief demanded in the complaint unless the judgment in another action is found to be invalid. *Watson v. Watson*, 49 N.C. App. 58, 61, 270 S.E.2d 542, 544 (1980). "A void judgment may be attacked directly or collaterally by any party adversely affected thereby." *Edwards v. Brown's Cabinets*, 63 N.C. App. 524, 529, 305 S.E.2d 765, 769 (1983). Hence, a "collateral attack in an independent or subsequent action is a permissible means of seeking relief from a judgment or order which is void on its face for lack of jurisdiction." *Watson v. Ben Griffin Realty and Auction*, 128 N.C. App. 61, 63, 493 S.E.2d 331, 333 (1997); *see Stroupe v. Stroupe*, 301 N.C. 656, 661, 273 S.E.2d 434, 438 (1981). If the judgment, however, is merely irregular, i.e. voidable, it can only be attacked by a direct appeal or motion in the cause. *See Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 360 S.E.2d 772 (1987); *Edwards*, 63 N.C. App. at 529-30, 305 S.E.2d at 769 ("[w]here the defect complained of is contrary to the course and practice of the court but is non-jurisdictional, the judgment is irregular and is voidable, but not void[, and s]uch a judgment is binding on the parties until corrected or vacated . . . by a motion in the cause").

**LEARY v. N.C. FOREST PRODS., INC.**

[157 N.C. App. 396 (2003)]

The plaintiffs in *Questor* sought to have the execution sale set aside because the defendants "did not pay their bid in cash." *Questor*, 46 N.C. App. at 614, 265 S.E.2d at 503. This alleged defect is not jurisdictional in nature. *See Edwards*, 63 N.C. App. at 529-30, 305 S.E.2d at 769. As the *Questor* confirmation order was therefore voidable at best, this Court properly concluded the plaintiffs were barred from collaterally attacking it. On the other hand, plaintiff in the case *sub judice* based his complaint in part on the absence of any notice to him of the sheriff's sale. Plaintiff states in his complaint that he never received such notice, and the record contains an affidavit by the Clerk of Superior Court indicating a lack of notice to plaintiff. "[O]ur [c]ourts have held that '[n]otice and an opportunity to be heard are prerequisites of jurisdiction . . . , and jurisdiction is a prerequisite of a valid judgment.' " *Inland Greens HOA v. Dallas Harris Real Estate-Constr.*, 127 N.C. App. 610, 613, 492 S.E.2d 359, 361 (1997) (quoting *Commissioners of Roxboro v. Bumpass*, 233 N.C. 190, 195, 63 S.E.2d 144, 147 (1951)). Consequently, as the clerk's confirmation order would be void absent notice to plaintiff, plaintiff was entitled to attack the order either directly, via appeal or motion in the cause, or, as he chose, indirectly, via collateral attack. *See Stroupe*, 301 N.C. at 661, 273 S.E.2d at 438; *Edwards*, 63 N.C. App. at 529-30, 305 S.E.2d at 769.

The majority opinion argues that because the district court had both personal and subject matter jurisdiction to enter the initial judgment in favor of N.C. Forest in 89 CVD 1966 and the clerk of the superior court possesses the general statutory authority to enter a confirmation of sale, the confirmation order in this case cannot be collaterally attacked as void. This argument ignores that due process requires the issuance of a notice of sale to a judgment debtor before his property can be offered for sale. *See* N.C.G.S. § 1-339.54 (2001). Without this procedural step, the clerk did not have the authority in this case to issue a confirmation order consummating the sale. *See* N.C.G.S. § 1-339.67 (2001). I would further note that the factual bases of the cases cited by the majority are distinguishable, *see Henderson County v. Osteen*, 292 N.C. 692, 702-03, 235 S.E.2d 166, 173 (1977) (where the debtor did have notice, and the court consequently acquired jurisdiction, but the debtor subsequently died and the administrator of the estate did not receive additional notice of the tax sale); *Edwards*, 63 N.C. App. at 527-28, 305 S.E.2d at 768 (where the reason for attacking the judgment was on voidable grounds), and the holdings in *Williams v. Dunn*, 163 N.C. 206, 212, 79 S.E. 512, 514 (1913), *Bank v. Gardner*, 218 N.C. 584, 586, 11 S.E.2d 872, 872 (1940),

and *Walston v. Applewhite & Co.*, 237 N.C. 419, 424, 75 S.E.2d 138, 142 (1953) are based on an unsubstantiated statement that the notice requirement in section 1-339.54 is merely directory and not mandatory. Such a premise, however, is contrary to the express language of the statute. *See* N.C.G.S. § 1-339.54 (mandating notice to judgment debtor).

Thus, to the extent the trial court's order dismissing plaintiff's action was based on plaintiff's engagement of a collateral attack on the confirmation order, it should be reversed.